UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY D. WELKER
        Plaintiff,                      CIVIL ACTION NO. 08-14786

    v.                                 DISTRICT JUDGE AVERN COHN

COMMISSIONER OF               MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of defendant's decision denying plaintiff's application for social security benefits. The Commissioner found that plaintiff was not disabled, because, although she could not perform her past work, she retained the residual functional capacity to perform jobs at the light exertional level and these jobs existed in significant numbers. Plaintiff contends that the determination is not supported by substantial evidence. Defendant contends otherwise. For the reasons discussed in this report, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

**Background**

This is plaintiff's fourth application for benefits. Her prior applications were denied, with the last one having been denied in 1998. Plaintiff filed this current application on June 8,

2005, alleging disability beginning July 26, 2004. Her insured status expired June 30, 2006. Thus the relevant time period for the court's review is July 26, 2004 through June 30, 2006. Plaintiff alleged disability due to carpal tunnel syndrome, thoracic nerve palsy, herniated disc, canal stenosis, and sciatica. (TR 35, 44, 62) The defendant found that through June 30, 2006 plaintiff had the residual functional capacity to perform a limited range of light work, including those jobs with only occasional stair climbing, and occasional balancing, stooping, kneeling, crouching or crawling. Additionally, plaintiff needed to avoid a hazardous work environment and could not work around unprotected heights or moving industrial machinery. The vocational expert testified that plaintiff's past work as a school custodian and production worker was medium and unskilled. Her work as a cleaner/housekeeper and shipping and receiving worker was light and unskilled. Because plaintiff needed a sit/stand option and such option was not available in any of her previous jobs, the ALJ determined that plaintiff could not do her past relevant work. However, the ALJ determined that there was other work which she could do at the light exertional level and unskilled work which included information clerk (1700), visual inspector (800), and sorter (700). Thus, the ALJ found that plaintiff was not disabled at any time from July 26, 2004 through that date she was last insured for benefits on June 30, 2006.

Plaintiff was 46 years of age on the date her insured status expired. She has a high school education having received her GED and past relevant work as a school custodian, factory worker, house-cleaner, parking attendant, and waitress. (TR. 18, 78)

**Standard of Review**

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

**Plaintiff's Claims:**

Plaintiff contends that the decision of the defendant is not supported by substantial evidence of record. Specifically, plaintiff contends that the ALJ's evaluation of the treating psychiatrist's restrictions was erroneous. However, it does not appear that there was a treating psychiatrist. In her brief, plaintiff names three doctors whose opinions are alleged to have been improperly disregarded by the ALJ. These are Dr. Frederick Wurster, D.O., her family physician for 18 years; Dr. Edmund Messina M.D., who diagnosed carpal tunnel and nerve palsy and with whom she treated from the summer of 1993 until the summer of 2000 (TR 65); and James Gosenback, a psychologist, with whom she treated for depression from winter, 2000 through summer, 2003. (TR 65, 93) None are psychiatrists. She also treated with Dr. Vivekanand Palavali, MD in June, 2005 for problems with her lumbar spine and who referred her to physical therapy. (TR 65) His name is not mentioned in her claim and he is not a psychiatrist.

**Medical Evidence**

The medical records show that plaintiff had a history of low back pain dating back to 1998 (TR 135). Dr. Wurster prescribed Darvocet, Soma and Xanax. (TR. 136). He reported muscle spasm on examination in 2005 at L3 – L5 and decreased forward flexion (TR 145) in May 2005. An MRI of the lumbar spine revealed moderate central disc profusion at L4 – 5 and herniation at L5 – S1, with mild central canal stenosis at L4 – 5 (TR 191). Intervertebral bodies and disc spaces were intact and normal with no evidence of spondylolysis or spondylolisthesis. There was also no evidence of traumatic or degenerative pathology noted. (TR 192)

Plaintiff was examined by Dr. Palavali in June 2005. (TR 212) Dr. Wurster had referred her. She complained of back and left leg pain which started about 9 months earlier. On examination, her lower extremity was positive for straight leg raising at 50° on the left. Sensation was slightly decreased to pin prick over the left calf. Her gait was remarkable for difficulty to heal toe walk on the left side. (TR 210 – 213) Conservative treatment was continued. No work related restrictions were noted. (Tr. 211)

Plaintiff was also seen and treated by Dr. Hugo Lopez-Negrete, M.D who is a partner of Dr. Palavali. (TR 211-215) He saw her on May 17, 2001 and at that point she complained of weakness in her right leg. She was on medication at that time including Darvocet, Soma, Naprosyn, Prilosec and birth control pills. On examination her sensation to pin prick was intact in both lower extremities. She had severe restriction in range of motion on forward flexion and increasing pain in her lower back on hyper extension. There was no tenderness of the sciatic notch or sciatic trunk. Reflexes were hypoactive to nearly absent at the knees and ankles. She was able to walk on heels and toes but not able to squat because of lower back pain. The Patrick maneuver was negative and reverse Patrick produced some lower back pain. The MRI which had been performed on April 6, 2001 showed a tiny left paracentral disc herniation and Dr. Lopez-Negrete stressed the tiny size. He opined that the herniation was not likely to be producing the amount of radicular pain of which plaintiff complained. He recommended that plaintiff begin walking for up to 45 minutes to one hour each day and a undertake a course of therapeutic exercise with chest to leg and straight leg raising exercises to increase flexibility for her lumbar spine. (TR 215)

In June 2005, plaintiff began physical therapy for her lower back (TR 132). Between June and August 2005 she reported decreased pain and improve sleep. (TR 125 – 32)   Plaintiff reported feeling much better with moist hot packs, ultrasound, soft tissue massage, stretching and positional alleviation. She could sit for one hour before needing to move around and her strength and active range of motion in her trunk had increased. Id.

In July 2005, plaintiff's ultrasound study following complaints of dizziness and vertigo was negative for problems within the carotid vessels. (TR 187)   Her CT scan of the head and auditory canals was also negative. (TR 188)   In July and August, plaintiff reported that she felt really good after physical therapy and was able to perform household chores for about 10 minutes. (TR 270) She had improved trunk flexion and side bending. (TR 271)  In August 2005, she reported improvement in her left leg and found swimming in a cool pool therapeutic. (TR 274) She was able to tolerate all exercises, and could perform them correctly and without guidance. (TR 275)

**Analysis**

1.   *Dr. Frederick Wurster, D.O. and Dr. Messina: The ALJ gave sufficient weight to their opinions.*

Dr. Wurster reported in January 2006 that plaintiff complained of back pain and had decreased range of motion in all areas of the lumbar spine and spasms at L3 – L5.  He continued to recommend conservative treatment. (TR 142) On June 27, 2006, three days before her insured status expired, Dr. Wurster saw plaintiff and reported that she was "doing well." (Tr. 139) She had come in for her medication refills.  Dr. Wurster did not see plaintiff from August, 2006

through April 2007, which he stated in April 2008 was due to her lack of insurance. (TR 314) In April 2007, Dr. Wurster noted plaintiff's complaints of back pain. He continued her prescription medication and advised moist heat and ice. (TR 136) Dr. Wurster imposed significant restrictions and opined that plaintiff could occasionally lift only up to 5 pounds but this was not until February 2008. At that time, he reported that she could sit for less than one hour in an 8 hour workday and stand or walk for less than one hour. He also opined that plaintiff required frequent position changes, that she could not perform any pushing or pulling of arm controls, or use her feet for repetitive movements on a sustained basis. She required complete freedom to rest frequently without restriction. He stated that he based his opinion on the MRI study from November 2007. (TR 309, 305) This was taken almost a year and half after her insured status expired. He did not cite to or indicate reliance on any other medical evidence. The MRI showed correlation with reported symptomatology and minimal degenerative disc disease. (Tr. 306). The notes show that plaintiff had experienced back pain for three years but presented with acute worsening only one week earlier. The findings show a normal spinal cord, normal signal in the vertebral bodies, with adequate vertebral body anatomic alignment. There was no spondylolisthesis. There was L5/S1 vertebral body peridiscal signal changes, typical for mild degenerative disease. Spinal levels T12-L1 and L3-L4 were all normal. The L4-5 level demonstrates very minimal intervertebral disc dessication, without evidence of impression on the thecal sac. There was at L5-S1 intervertebral disc signal loss with a left paracentral focal HNP which abutted and displaced posteriorly the left S1 nerve root, extending inferiorly and displacing the left S1 nerve root laterally. (Tr. 305)

The ALJ did not give this opinion significant weight as it was rendered well after plaintiff's insured status expired and was based on an MRI taken 17 months beyond the relevant period. In addition, it cannot serve to find plaintiff disabled prior to June 30, 2006 because Dr. Pavalavi's letter to Dr. Wurster in September, 2007 explains that plaintiff was doing well until July 2007 when she developed more back and leg pain which was shown as nerve compression on the MRI from July 2007.

The ALJ appropriately relied on the opinion of the reviewing physician who based his conclusion on the medical records and tests which occurred during the period plaintiff was insured. This opinion is also consistent with plaintiff's own reports of feeling "really good" after physical therapy and experiencing improved trunk flexion and side bending, her reports to Dr. Wurster and his findings during that period. (Tr. 139) Dr. Edmund Messina M.D. diagnosed and treated plaintiff for carpal tunnel and nerve palsy. However, his treatment was well before her alleged onset date of 2004, as he saw her from the summer of 1993 until the summer of 2000. Thus, it was not error for the ALJ to give it little weight and to rely on the determination of the reviewing physician for the physical capacity of plaintiff.[1]

2.   *Dr. Grosenbach's 2005 Report: The ALJ appropriately accounted for plaintiff's mental limitations.*

---

[1] The government cites to *Combs v. Commr of Social Security*, 459 F3d 640, 651 (6th Cir. 2006) as support for the proposition that it is appropriate for the ALJ to adopt the reviewing physician's opinion over that of treating physician. That case does not stand for that proposition. The Court of Appeals, *en banc,* Rogers, Circuit Judge, held in a 32 page opinion that the change in regulation that deleted obesity as listed disability was not impermissibly retroactive.

Dr. Grosenbach is a psychologist listed by plaintiff as a treater from Winter 2000 to Summer 2003. She reports that he provided services of counseling and medication for depression. In his evaluation in June, 2005 for the purpose of determining whether she needed academic accommodations in college, he notes that he had recently assessed her for ADHD and depression. He does not report any prior period of treatment. (Tr. 94)  In his conclusion, nothing beyond the one time assessment is reported. He notes that she would benefit from accommodations, medications, and neuro-cognitive training, but he does not mention any previous medication and states only he would monitor the progress of the medication (prescribed by someone else "you") and provide reports. It does not appear that any additional reports were forthcoming.

No specific limitations on work from any mental impairment were identified. She has some inattentiveness but the state agency psychologist who reviewed the record and plaintiff's reports of daily activities opined that there was only mild limitations in such activities. She has not had any hospitalizations, psychiatric decompensation, or other event indicating a severe mental impairment. There is no evidence to show that her ADHD prevents her from performing the work identified.

**Conclusion**

Given the medical evidence of record and plaintiff's reports of her daily activities, the ALJ reasonably accommodated her limitations in determining that she could perform only a limited range of light work with a sit/stand option. The vocational expert's testimony regarding jobs that accommodated these limitations are appropriately considered in determining that

substantial evidence supports the ALJ's findings. In addition, plaintiff has failed to demonstrate that she is totally disabled and although she has asked this court to award benefits, even if reversal of the determination were found to be justified by the district judge, an award of benefits is not appropriate here. No more than a remand should be ordered for further consideration of the medical and mental health evidence because there is not the overwhelming proof of disability required to support an outright award of benefits. See *Faucher v, Secretary of Health and Human Servs.*, 17 F3d171, 176 (6th Cir. 1985).

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure, see also Local Rule LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan<br>
Virginia M. Morgan<br>
United States Magistrate Judge

Dated: December 17, 2009

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on December 17, 2009.

s/Jane Johnson<br>
Case Manager to<br>
Magistrate Judge Virginia M. Morgan